UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM LOFTUS, SIDNEY NAIMAN and
LOUIS NAIMAN, individually and on behalf
of all others similarly situated,

Petitioners,

v.

RESOURCE MARKETING CORP.

Respondent.

Case No.   1: 19-mc-046
(LEK/DJS)

U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
SEP 1 2 2019
AT_____ O'CLOCK
John M. Domurad, Clerk - Albany

## NOTICE OF PETITIONER'S MOTION FOR ORDER TO REQUIRE RESPONDENT RESOURCE MARKETING CORP. TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENA AND INCORPORATED MEMORANDUM OF LAW

PLEASE TAKE NOTICE that petitioners William Loftus, Sidney Naiman, and Louis Naiman hereby move, pursuant to Rules 45 and 37[1] of the Federal Rules of Civil Procedure, for an Order enforcing the petitioners' Subpoena to Produce Documents, served upon the respondent by in-hand service. Despite being served, and acknowledging receipt of such service, Resource Marketing Corp. ("Resource Marketing") has failed to provide a response or any of the requested documents.

Please take further notice that in accordance with LR 7.1(b)(2), respondent's opposition papers, if any, must be filed and served on counsel no fewer than 17 days prior to the return date of this motion.

The petitioners made a good faith effort to resolve the issues set forth in this motion, as detailed below and stated in the Declaration of Anthony Paronich, attached as Exhibit 1.

---

[1] As this is a motion pursuant to Fed. R. Civ. P. 37 to compel discovery, the petitioners have incorporated a memorandum of law. *See* LR 7.1(a)(1)(D).

### Background of the Underlying Action

The Telephone Consumer Protection Act ("TCPA") bars calls to cell phones using an artificial telephone dialing system ("ATDS") and/or an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1). The TCPA also bars also unsolicited telemarketing to residential (including cellular) telephone numbers on the National Do Not Call Registry ("NDNCR"). 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Prior express consent is an affirmative defense to these claims. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). If the calls are for telemarketing purposes, the defendant must prove "prior express written consent," a term of art requiring, among other things, that the allegedly consenting party was informed that calls would be made by ATDS and that an individual needn't consent to them in order to buy anything. 47 C.F.R. § 64.1200(f)(8); *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) ("2012 FCC Order"). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995); *accord In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

In the underlying putative class action, petitioners William Loftus, Sidney Naiman, and Louis Naiman allege that Sunrun Inc. ("Sunrun") and its agents, including Resource Marketing, made telemarketing robocalls to them and thousands of others in violation of the foregoing provisions of the TCPA. *See* Paronich Decl. at ¶ 4, First Am. Compl. Injunction and Damages, attached as Exhibit A. Mr. Loftus also alleges that Sunrun recorded cellular conversations with him and his fellow Californians without their consent, in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632.7. The petitioners allege that vendors are actively

involved in Sunrun's telemarketing. History supports this as Sunrun recently settled a TCPA class action where evidence of a vendor's intimate involvement in Sunrun's telemarketing was brought to light. Pls.' Mem. P&A Supp. Pls.' Mot. Class Certification at ECF 2, 7, 9, 10, 14, 16, 18, 20, *Slovin v. Sunrun Inc.*, Case No. 4:15-cv-05340-YGR (N.D. Cal. Dec. 8, 2017), ECF No. 159.

### The Subpoena was Served, Receipt was Acknowledged and No Response was Made

The petitioners propounded a subpoena on Resource Marketing Corp. on August 7, 2019. *See* Paronich Decl. at ¶ 5. As such, the subpoena response was due August 21, 2019. *Id.* Counsel for the petitioners contacted Resource Marketing on August 23, 27 and 29, 2019 and did not receive a response. *Id.* at ¶ 6. On August 29, 2019, counsel for petitioners received a voicemail from Resource Marketing, which stated "I know we did receive [the subpoena], it was served to us. However, I think it was lost somewhere. So, if you could just do us a huge favor and resend...that would be greatly appreciated". *Id.* at ¶ 7. That same day, counsel for petitioners sent a copy of the subpoena over via e-mail. *Id.* at ¶ 8. Resource Marketing did not respond to the subpoena. *Id.* at ¶ 9. Counsel for petitioners conferred again with Resource Marketing who informed him that Resource Marketing was represented by counsel, who they claimed they were unable to identify, but a response to the subpoena would be made by September 6, 2019. *Id.* at ¶ 10.

Resource Marketing has not responded to the subpoena. *Id.* at ¶ 11.

### The Documents Requested are Necessary to the Underlying Litigation

The subpoena seeks documents relevant to the petitioners claims against Sunrun in the underlying action.

First, Request No. 1 seeks records of autodialed or pre-recorded calls during the putative class period, September 1, 2018 through the present. This information is relevant because the logs of the calls during the class period will be essential documents used in proving the prima facie TCPA claims. Moreover, in putative TCPA class actions, classwide calling data is relevant to numerosity, commonality and typicality. *E.g. Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1086-87 (S.D. Cal. 2015). Relatedly, Request 3 seeks recordings of those calls. Recordings of the calls made by Resource Marketing will identify if Sunrun, though its agent, complied with CIPA.

Next, the subpoena seeks information that identify the specifics of the dialing system that was used to make the calls. *See* Requests 2 and 3. Whether a dialer is an ATDS is an element of the 47 U.S.C. § 227(b)(1) claims and is frequently a hotly contested factual question in TCPA cases. *See, e.g.*, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043-53 (9th Cir. 2018).

The subpoena then seeks information regarding Resource Marketing Corp.'s process for obtaining phone numbers and any alleged consent they maintained. Relatedly, it asks about Resource Marketing Corp.'s process for having clear and conspicuous disclosures, required for prior express written consent. 47 C.F.R. § 64.1200(f)(8); 2012 FCC Order, 27 FCC Rcd. at 1844 ¶ 33. Prior express written consent signed in compliance with the E-SIGN Act is also sought and relevant because callers may use E-SIGN-compliant signatures in lieu of wet-ink signatures. 2012 FCC Order, 27 FCC Rcd. at 1844 ¶ 34. Courts routinely grant similar discovery requests. *E.g.*, *Thrasher v. CMRE Fin. Servs.*, No. 14-CV-1540 BEN (NLS), 2015 U.S. Dist. LEXIS 34965, at *10-16 (S.D. Cal. Mar. 13, 2015); *Stemple v. QC Holdings, Inc.*, No. 12-cv-1997-CAB (WVG), 2013 U.S. Dist. LEXIS 99582, at *22 (S.D. Cal. June 17, 2013). TCPA-violating lead generators have taken to creating a veneer of consent through ostensible online opt-ins to

telemarketing robocalls. Petitioners and their digital forensic expert will analyze the logs of any such websites, because such opt-ins are frequently the handiwork of fraud by online marketing "affiliates." *See, e.g.*, *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 176-77 (S.D. Cal. 2019) (certifying TCPA class action, acknowledging possibility that online leads were bogus); *Berman v. Freedom Fin. Network, LLC*, No. 18-cv-01060-YGR, 2019 U.S. Dist. LEXIS 25382 (N.D. Cal. Feb. 15, 2019) (denying motion to strike putative TCPA class claims, acknowledging possibility that online lead was bogus). However, that analysis cannot be performed without these documents.

Request No. 8 seeks documents relating to the petitioners themselves. This information is clearly relevant because it is reasonably calculated to lead to information about how many times petitioners were called, via what dialer, pursuant to what (if any) purported consent, and with how much knowledge or willfulness. This information may also be relevant to typicality under Rule 23. Furthermore, the petitioners would have had virtually no interaction with the respondent *unrelated* to telemarketing, so every document that exist would be relevant as this is not a case where the petitioners had an existing business relationship, it's a solicitation lawsuit.

Finally, the subpoena seeks any complaints, demand letters or internal correspondence relating to Sunrun. Correspondence is relevant because it will reflect the degree of control Sunrun enjoys over Resource Marketing, which is relevant to vicarious liability. Indeed, a class certification brief in a prior Sunrun cites at least half a dozen email exchanges between Sunrun and a vendor similar to Resource Marketing. Similarly, if Resource Marketing was receiving complaints regarding its telemarketing practices, Sunrun would have been placed to actual or constructive notice of TCPA violations.

## Conclusion

Resource Marketing Corp. was validly served with a subpoena for documents relating to the petitioners' underlying claims. They have acknowledged service of that subpoena, however, they have not complied with the response date or their unilateral extension of time to respond. The petitioners have also demonstrated why each request is relevant to the underlying claims.

As such, this Court should require Resource Marketing Corp. to provide all requested documents within 14 days after its Order and advise that Resource Marketing Corp. that its failure to comply may result in the imposition of sanctions pursuant to Fed. R. Civ. P. 45(g). A proposed Order is attached as Exhibit 2.

Respectfully submitted,
**BELLIN & ASSOCIATES LLC**

By: _Aytan Y. Bellin_

By: Aytan Y. Bellin, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606
Tel:  (914) 358-5345-2400
Fax: (212) 571-0284
Email: aytan.bellin@bellinlaw.com

Dated: September 11, 2019

Anthony I. Paronich, *Subject to Pro Hac Vice*
anthony@bparonichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM LOFTUS, SIDNEY NAIMAN and            Case No.
LOUIS NAIMAN, individually and on behalf
of all others similarly situated,

                Petitioners,

    v.

RESOURCE MARKETING CORP.

                Respondent.

## AFFIDAVIT OF ANTHONY PARONICH IN SUPPORT OF PETITIONER'S MOTION FOR ORDER TO REQUIRE RESPONDENT RESOURCE MARKETING CORP. TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENA AND INCORPORATED MEMORANDUM OF LAW

I, Anthony I. Paronich, being duly sworn, deposes and states as follows:

1.      The facts stated in this affidavit are within my personal knowledge and are true and correct. I am over 18 years of age, have never been convicted of a felony, and am competent to make this affidavit.

2.      I am the founder of the law firm of Paronich Law, P.C. in the Commonwealth of Massachusetts. My business address is 99 High Street, Suite 2400, Boston, Massachusetts 02110. My telephone number is 508.221.1510. My facsimile number is 617.830.0327. My email address is anthony@paronichlaw.com.

3.      I make this affidavit in support of the petitioner's Motion for Order to Require Respondent Resource Marketing Corp.to produce documents pursuant to subpoena and incorporated memorandum of law.

4.      Petitioners William Loftus, Sidney Naiman, and Louis Naiman allege that Sunrun Inc. ("Sunrun") and its agents, including Resource Marketing, made telemarketing robocalls to them and thousands of others in violation of the foregoing provisions of the TCPA. A copy of the Amended Complaint in the underlying action is attached as Exhibit A. In discovery, SunRun has identified Resource Marketing Corp. as one of the entities involved in contacting the Plaintiff.

5.      The petitioners propounded a subpoena on Resource Marketing Corp. on August 7, 2019. See Subpoena attached as Exhibit B, Affidavit of Service attached as Exhibit C. As such, the subpoena response was due August 21, 2019.

6.      I contacted Resource Marketing on August 23, 27 and 29, 2019 and did not receive a response.

7.      On August 29, 2019, I received a voicemail from Resource Marketing, which stated "I know we did receive [the subpoena], it was served to us. However, I think it was lost somewhere. So, if you could just do us a huge favor and resend…that would be greatly appreciated".

8.      That same day, counsel for petitioners sent a copy of the subpoena over via e-mail.

9.      Resource Marketing did not respond to the subpoena.

10.     Counsel for petitioners conferred again with Resource Marketing who informed him that Resource Marketing was represented by counsel, who they claimed they were unable to identify, but a response to the subpoena would be made by September 6, 2019.

11.     Resource Marketing has not responded to the subpoena.

Further affiant sayeth naught.

Sworn to and subscribed in Plymouth, Massachusetts this 9th day of  September, 2019.

_____

Anthony Paronich

# EXHIBIT A

1  Jon B. Fougner (State Bar No. 314097)
   jon@fougnerlaw.com
2  600 California Street, 11th Floor
   San Francisco, California 94108
3  Telephone: (415) 577-5829
   Facsimile: (206) 338-0783
4

5  [Additional counsel appear on signature page]

6  *Attorneys for Plaintiffs William Loftus, Sidney*
   *Naiman, Louis Naiman and the Proposed*
7  *Classes*

8

9                 UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
10                      OAKLAND DIVISION

11
   WILLIAM LOFTUS, SIDNEY NAIMAN          Case No. 3:19-cv-01608-YGR
12 and LOUIS NAIMAN, individually and on
   behalf of all others similarly situated,
13                                        **FIRST AMENDED COMPLAINT FOR
                                          INJUNCTION AND DAMAGES**
14
                                          
15           Plaintiffs,
        v.                                **Class Action**
16
   SUNRUN INC. and MEDIA MIX 365,
17 LLC, and DOES 1-10,                     **JURY TRIAL DEMAND**

18                                         Complaint Filed: March 27, 2019
19           Defendants.

20

21      Plaintiffs William Loftus, Sidney Naiman and Louis Naiman, by their undersigned

22 counsel, for this first amended class action complaint against Defendants Sunrun Inc. ("Sunrun")

23 and Media Mix 365, LLC ("Media Mix") and their present, former and future direct and indirect

24 parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

25                          **I.    INTRODUCTION**

26      1.  Nature of Action: This case arises from Defendants' unsolicited telemarketing in

27 violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and their non-

28

1  consensual recording of cellular communications in violation of the California Invasion of

2  Privacy Act ("CIPA"), Cal. Penal Code § 632.7.

3      2.  The telemarketing was conducted using automated telephone dialing systems

4  ("ATDSs"), a tactic among those that inspired Congress to enact the TCPA and that most

5  infuriate consumers to this day.

6      3.  The telemarketing targeted, among other phone lines, cellular telephones and

7  numbers listed on the National Do Not Call Registry ("NDNCR").

8      4.  For every 7,000,000 robocalls, there's only one TCPA lawsuit in federal court.

9  *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last*

10  *Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-

11  you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon,

12  *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018),

13  https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (4,392 TCPA complaints).

14      5.  Demonstrating the massive scope of its robocalling, Sunrun has lost this 1-in-

15  7,000,000 lottery repeatedly, being sued under the TCPA time and again. *E.g.*, Notice Removal,

16  *Saunders v. Sunrun, Inc.*, Case No. 1:19-cv-3127 (N.D. Ill. May 9, 2019), ECF No. 1; Compl.,

17  *Ewing v. Encore Solar, LLC*, Case No. 3:18-cv-02247-CAB-MDD (S.D. Cal. Sept. 27, 2018),

18  ECF No. 1; Notice Removal, *Va v. Sunrun Inc.*, Case No. 1:18-cv-00856-JHR-KBM (D.N.M.

19  Sept. 12, 2018), ECF No. 1; Notice Removal, *Barker v. Sunrun Inc.*, Case No. 1:18-cv-00855-

20  KK-LF (D.N.M. Sept. 12, 2018), ECF No. 1; Compl., *Taylor v. Sunrun Inc.*, Case No. 5:18-cv-

21  01207-JGB-SHK (C.D. Cal. June 5, 2018), ECF No. 1; Compl., *Knapp v. Sunrun, Inc.*, Case No.

22  2:18-cv-00509-MCE-AC (E.D. Cal. Mar. 8. 2018), ECF No. 1; Compl., *Bozarth v. Sunrun, Inc.*,

23  Case No. 3:16-cv-3550-EMC (N.D. Cal. June 24, 2016), ECF No. 1; Compl., *Slovin v. Sunrun,*

24  *Inc.*, Case No. 4:15-cv-05340-YGR (N.D. Cal. Nov. 20, 2015), ECF No. 1.

25      6.  The core business of Media Mix, meanwhile, is illegal, unsolicited telemarketing to

26  generate solar leads, including to consumers on the NDNCR, in violation of the TCPA and other

27  federal law. *See generally* Compl., *United States v. Media Mix 365, LLC*, Case No. 8:19-cv-

28

1   01243-GW-JEM (C.D. Cal. June 21, 2019), ECF No. 1; Stipulation Entry Order Permanent

2   Injunction and Civil Penalty Judgment, *id.* (C.D. Cal. June 21, 2019), ECF No. 2.

## II.   PARTIES

7.  Plaintiff Loftus is an individual.

8.  He resides in Ventura County, California.

9.  Plaintiff Sidney Naiman is an individual.

10. He resides in Maricopa County, Arizona.

11. Plaintiff Louis Naiman is an individual.

12. He resides in Clark County, Nevada.

13. Sunrun is a corporation.

14. It is a Delaware corporation.

15. Its principal place of business is 595 Market Street, 29th Floor, San Francisco, California 94105.

16. Media Mix is an LLC.

17. It is a California LLC.

18. Its principal place of business is 4 Hutton Centre Drive, Suite 200, Santa Ana, California 92707.

## III.   JURISDICTION AND VENUE

19. Jurisdiction: This Court has federal-question subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction over Plaintiffs' CIPA claims pursuant to 28 U.S.C. § 1367 because the CIPA violations are so related to the TCPA violations—arising from the same telemarketing calls—as to form part of the same case or controversy.

20. Personal Jurisdiction: This Court has personal jurisdiction over Defendants because:

a.      they are headquartered in California;

b.      their conduct at issue was organized from their California headquarters; and

1           c.      Defendants' conduct at issue intentionally targeted Plaintiff Loftus, a

2    California resident, while he was in California, at his cellular telephone number, which bears a

3    California area code.

4         21. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2)

5    because a substantial part of the events giving rise to Plaintiffs' claims—namely, the direction of

6    the illegal telemarketing and illegal recording from Sunrun's headquarters—occurred in this

7    District.

8         22. Intradistrict Assignment: Assignment to this Division is proper pursuant to Civil

9    Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiffs'

10   claims—namely, the direction from Sunrun's headquarters of the illegal telemarketing and of the

11   illegal recording—occurred in San Francisco.

12                     **IV.   FACTS**

13   **A.    California's Ban on Nonconsensual Recording of Calls with Cellular Telephones**

14        23. The Right of Privacy: The California State Legislature passed CIPA in 1967 to

15   protect the right of privacy of the people of California. Secret recording "can warrant the

16   imposition of criminal penalties, suggesting the California legislature, and perhaps an ordinary

17   person, would view it to be highly offensive." *Safari Club Int'l v. Rudolph*, 845 F.3d 1250, 1267

18   (9th Cir. 2017). "In enacting the Privacy Act, the Legislature declared in broad terms its intent to

19   protect the right of privacy of the people of this state from what it perceived as a serious threat to

20   the free exercise of personal liberties that cannot be tolerated in a free and civilized society."

21   *Flanagan v. Flanagan*, 41 P.3d 575, 581 (Cal. 2002) (internal quotation marks and alteration

22   marks omitted). Accordingly, "courts are required to liberally construe section 632 to effectuate

23   the important public policy ensuring telephonic privacy." *Kight v. CashCall, Inc.*, 179 Cal. Rptr.

24   3d 439, 454 (4th App. Dist. 2014).

25        24. Constitutional Roots: Californians have a constitutional right to privacy. The

26   California Supreme Court has linked the constitutionally protected right to privacy with the

27   intent and provisions of CIPA.

28

1      25. Updated for Cell Phones: California Penal Code section 632.7 was added to CIPA in
2  1992. Section 632.7 prohibits intentionally recording communications involving cellular or
3  cordless telephones.

4      26. No Retroactive Consent: California Penal Code section 632.7 is violated the moment
5  a recording of a cellular or cordless conversation is made without the consent of all parties
6  thereto, regardless of whether recordation is subsequently disclosed or consented to.

7  **B.    The Enactment of the TCPA and Its Regulations**

8      27. Robocalls Outlawed: Enacted in 1991, the TCPA makes it unlawful "to make any call
9  (other than a call made for emergency purposes or made with the prior express consent of the
10  called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . .
11  to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1).
12  Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by
13  the Federal Communications Commission ("FCC") and herein. Encouraging people to hold
14  robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause
15  of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

16      28. Rationale: In enacting the TCPA, Congress found: "Evidence compiled by the
17  Congress indicates that residential telephone subscribers consider automated or prerecorded
18  telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an
19  invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105
20  Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls
21  to the home, except when the receiving party consents to receiving the call or when such calls are
22  necessary in an emergency situation affecting the health and safety of the consumer, is the only
23  effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.*
24  § 2(12).

25      29. The TCPA's sponsor described unwanted robocalls as "the scourge of modern
26  civilization. They wake us up in the morning; they interrupt our dinner at night; they force the
27  sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137
28  Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

1    30. Prior Express Written Consent: The FCC has made clear that "prior express written

2    consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it

3    ordered:

> [A] consumer's written consent to receive telemarketing robocalls
> must be signed and be sufficient to show that the consumer: (1)
> received clear and conspicuous disclosure of the consequences of
> providing the requested consent, *i.e.*, that the consumer will
> receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information,
> agrees unambiguously to receive such calls at a telephone number
> the consumer designates. In addition, the written agreement must
> be obtained without requiring, directly or indirectly, that the
> agreement be executed as a condition of purchasing any good or
> service.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of*

*1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

    31. Do Not Call Registry: Additionally, the TCPA outlaws unsolicited telemarketing

(robocalls or otherwise) to phone numbers on the NDNCR. 47 U.S.C. § 227(c); 47 C.F.R. §

64.1200(c)(2). Encouraging people to hold telemarketers accountable on behalf on their fellow

Americans, the TCPA provides a private cause of action to persons who receive such calls. 47

U.S.C. § 227(c)(5).

C.    **The Worsening Problem of Robocalls and Spam Texts**

    32. Unfortunately, the problems Congress identified when it enacted the TCPA have only

grown worse in recent years.

    33. "Month after month, unwanted [communications], both telemarketing and

informational, top the list of consumer complaints received by the [Federal Communications]

Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection

Act of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

    34. "Robocalls and telemarketing calls are currently the number one source of consumer

complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016),

https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC

Chairman).

35. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

36. In 2017, the FTC received 4,501,967 complaints about robocalls, up from 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

37. Like most other leading newspapers, *The New York Times* has been writing and reporting on the exploding number of robocall complaints filed by consumers with the FTC and widespread consumer outrage about illegal telemarketing. Gail Collins, *Let's Destroy Robocalls*, N.Y. Times. (Mar. 1, 2019), https://www.nytimes.com/2019/03/01/opinion/robocall-scams.html; Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

38. An Emmy-winning journalist recently observed: "Everybody is annoyed by robocalls. Hatred of them might be the only thing that everyone in America agrees on now." *Robocalls*, Last Week Tonight with John Oliver (HBO Mar. 10, 2019), *available at* https://www.youtube.com/watch?v=FO0iG_P0P6M.

39. The harm from of illegal robocalls is "is at least $3 billion per year from lost time alone." Babette Boliek & Eric Burger, *Beating Back Unwanted Robocalls*, FCC (June 5, 2019), https://www.fcc.gov/news-events/blog/2019/06/05/beating-back-unwanted-robocalls (statement of FCC Chief Economist and FCC Chief Technology Officer).

40. In fact, the harm is much greater than the time lost outright, because "little surges of the stress hormone cortisol" from interruptions from smartphones result in elevated heart rates, sweaty hands, tightened muscles, anxiety and distraction, a "switch cost" that weighs on a person

1   even after the interruption ends, reducing his or her efficiency by 40%. Stephanie Stahl, *Constant*

2   *Interruptions From Smartphone Can Impact Brain Chemistry, Scientists Say*, CBS Philly (May

3   29, 2018), https://philadelphia.cbslocal.com/2018/05/29/scientists-constant-interruptions-

4   smartphone-impact-brain-chemistry/.

5       41. Robocalls are overwhelming hospitals and patients, threatening a new kind of health

6   crisis. Tony Romm, *Robocalls Are Overwhelming Hospitals and Patients, Threatening a New*

7   *Kind of Health Crisis*, Wash. Post (June 17, 2019),

8   https://www.washingtonpost.com/technology/2019/06/17/robocalls-are-overwhelming-hospitals-

9   patients-threatening-new-kind-health-crisis/.

10   **D.**    **Sunrun's Years-Long History of Illegal Robocalls and Telemarketing**

11       42. Sunrun sells goods and services related to solar energy.

12       43. Some of Sunrun's marketing strategies involve ATDSs.

13       44. Some of Sunrun's marketing strategies involve the use of ATDSs to place

14   telemarketing phone calls.

15       45. Sunrun uses Twilio.

16       46. Sunrun uses CallFire.

17       47. Sunrun uses Five9.

18       48. Sunrun uses InContact.

19       49. Sunrun uses Skype.

20       50. Sunrun uses Ytel.

21       51. Sunrun uses equipment that has the capacity—(1) to store numbers to be called or (2)

22   to produce numbers to be called, using a random or sequential number generator—and to dial

23   such numbers automatically (even if the system must be turned on or triggered by a person).

24       52. Recipients of these outbound calls, including Plaintiffs, did not consent to receive

25   them.

26       53. Sunrun's telemarketing calls were not necessitated by an emergency.

27       54. Thousands of people have complained to the FCC or FTC about telemarketing by

28   Sunrun or its affiliates and vendors.

1       55. To thwart victims' efforts to determine who is illegally robocalling them, Sunrun

2   hides behind aliases such as "Solar America."

3       56. Sunrun's practice is to continuing robocalling people even after they file TCPA

4   lawsuits against it.

5       57. Sunrun labels people who complain about its telemarketing "screamers" even if they

6   don't scream.

7       58. According to Sunrun's former employees, people who receive Sunrun's telemarketing

8   are generally annoyed by it and don't want to buy Sunrun's products.

9       59. Sunrun calls numbers on the NDNCR several times a day for weeks at a time despite

10   do-not-call requests from the people at those very numbers.

11       60. Sunrun accepts the benefits of its vendors' illegal telemarketing while knowing that

12   it's illegal.

13       61. Sunrun tries to distance itself from its vendors, calling them "imposters."

14       62. Sunrun uses vendors even though they are subjects of FTC enforcement actions for

15   illegal telemarketing.

16       63. Violating the TCPA is profitable for Sunrun.

17   **E.     Media Mix's Years-Long History of Illegal Robocalls and Telemarketing**

18       64. Media Mix markets goods and services related to solar energy and sells leads to

19   companies that sell the same.

20       65. One of Media Mix's marketing strategies involves ATDSs.

21       66. One of Media Mix's marketing strategies involves the use of ATDSs to place

22   telemarketing phone calls.

23       67. Media Mix uses equipment that has the capacity—(1) to store numbers to be called or

24   (2) to produce numbers to be called, using a random or sequential number generator—and to dial

25   such numbers automatically (even if the system must be turned on or triggered by a person).

26       68. Recipients of these outbound calls, including Plaintiff Loftus, did not consent to

27   receive them.

28       69. Media Mix's telemarketing calls were not necessitated by an emergency.

1      70. Scores of people have complained to the FCC or FTC about telemarketing by Media

2   Mix.

3      71. To thwart victims' efforts to determine who is illegally robocalling them, Media Mix

4   hides behind aliases such as "Solar Research Group" and falsely claims not to be making sales

5   calls.

6      72. Media Mix calls numbers on the NDNCR.

7      73. Media Mix has access to the NDNCR but has not downloaded any phone numbers

8   from it since 2013.

9      74. Media Mix called at least thousands of phone numbers more than 3 times in a single

10  day.

11     75. Media Mix called at least thousands of phone numbers more than 30 times each.

12     76. Media Mix called at least one number more than 300 times in less than six months.

13     77. Media Mix called at least one number over 1,000 times in less than one year.

14     78. Violating the TCPA is profitable for Media Mix.

15  **F.    Defendants' Unsolicited, Automated Telemarketing to Plaintiff Loftus**

16     79. Plaintiff Loftus is, and at all times mentioned herein was, a "person" as defined by

17  47 U.S.C. § 153(39).

18     80. He is the user of a phone number that begins "(805) 405" (the "Loftus Phone

19  Number"). All calls to him referenced herein were to the Loftus Phone Number.

20     81. The Loftus Phone Number is assigned to a cellular telephone service.

21     82. The Loftus Phone Number has been listed on the NDNCR since 2006.

22     83. Plaintiff Loftus never consented to receive calls from Sunrun.

23     84. He never gave the Loftus Phone Number to Sunrun.

24     85. He never did business with Sunrun.

25     86. Sunrun called the Loftus Phone Number.

26     87. Sunrun made telemarketing calls to the Loftus Phone Number.

27     88. Sunrun made telemarketing calls to the Loftus Phone Number using an ATDS.

28

1    89. On September 27, 2018, a motion for preliminary approval was filed in *Slovin*, with a

2    class period ending on August 31, 2018.

3    90. Media Mix made unsolicited, automated telemarketing calls to the Loftus Phone

4    Number on Sunrun's behalf on at least the following occasions:

5          a.    September 4, 2018

6          b.    September 5, 2018 (twice)

7          c.    September 6, 2018 (twice)

8          d.    September 7, 2018 (twice)

9          e.    January 25, 2019

10   91. The January 25, 2019, call was answered by Plaintiff Loftus.

11   92. When he answered, there was a long click and pause, indicating that an ATDS had

12   been used to dial the call.

13   93. But Plaintiff Loftus had not consented to receive calls from Media Mix.

14   94. On information and belief, and based in part on the area code of the caller IDs, the

15   caller IDs were spoofed or selected so as to create the false impression that the call was being

16   dialed by a live person in Plaintiff Loftus's community rather than a distant computer.

17   95. During the call, Media Mix transferred Plaintiff Loftus to Sunrun and Sunrun's goods

18   and services were promoted.

19   96. Media Mix recorded a portion of the call without Plaintiff Loftus's consent.

20   97. Sunrun recorded a portion of the call without Plaintiff Loftus's consent.

21   98. Plaintiff Loftus was not interested in Sunrun's products.

22   99. After the January 25, 2019, call, Plaintiff Loftus called Sunrun several times asking

23   that it stop calling him.

24   100.    Nevertheless, Sunrun called him again, offering its goods and services.

25   101.    The caller IDs that appeared on the calls included (805) 741-1860 and (805) 202-

26   5175.

27

28

**G.    Sunrun's Unsolicited, Automated Telemarketing to Plaintiff Sidney Naiman**

102.    Plaintiff Sidney Naiman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

103.    He is a user of a phone number that begins "(925) 735" (the "Sidney Naiman Phone Number"). All calls to him referenced herein were to the Sidney Naiman Phone Number.

104.    The Sidney Naiman Phone Number is assigned to a cellular telephone service.

105.    Plaintiff Sidney Naiman never consented to receive calls from Defendants.

106.    He never gave the Sidney Naiman Phone Number to Defendants.

107.    He never did business with Defendants.

108.    Sunrun called the Sidney Naiman Phone Number on March 15, 2019.

109.    That call, like others from Sunrun to the Sidney Naiman Phone Number, was characterized by a distinctive click and pause, indicating that it had been autodialed.

110.    Sunrun made telemarketing calls to the Sidney Naiman Phone Number.

111.    Sunrun made telemarketing calls to the Sidney Naiman Phone Number using an ATDS.

112.    The caller IDs that appeared on the foregoing calls to the Sidney Naiman Phone Number was (925) 247-1615.

113.    On information and belief, and based in part on the area code of the caller IDs, the caller IDs were spoofed or selected so as to create the false impression that the call was being dialed by a live person in Plaintiff Sidney Naiman's community rather than a distant computer.

114.    Plaintiff Sidney Naiman received an e-mail from "Mustafa from Sunrun," mustafa.fazli@sunrun.com.

115.    The original complaint in this case included TCPA allegations by Plaintiff Sidney Naiman and included the first 6 digits of his phone number. (Dkt. No. 1.) It was filed on March 27, 2019. (*Id.*)

116.    Process was served on Sunrun on April 3, 2019. (Dkt. No. 6.)

117.    Nevertheless, in the months since, Sunrun has continued to call Plaintiff Sidney Naiman, at the same phone number, to try to sell him its goods and services.

- 12 -
FIRST AM. COMPL.
*Loftus v. Sunrun Inc.*, Case No. 3:19-cv-01608-YGR

118.   For example, on May 22, 2019, Sunrun made an autodialed call to Plaintiff Sidney Naiman.

119.   The caller ID showed as (925) 291-9451.

120.    Plaintiff Sidney Naiman said not to send him autodialed telemarketing calls.

121.   On May 22, 2019, Sunrun sent an email to Plaintiff Sidney Naiman's email address.

122.   As another example, on May 29, 2019, Sunrun left a message on Plaintiff Sidney Naiman's voicemail.

123.   The caller ID showed as (530) 410-9794.

124.   As another example, later on May 29, 2019, Sunrun called Plaintiff Sidney Naiman's phone. The caller ID showed as (530) 410-9794.

**H.   Sunrun's Unsolicited, Automated Telemarketing to Plaintiff Louis Naiman**

125.   Plaintiff Louis Naiman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

126.   He is the user of a phone number that begins "(707) 832" (the "Louis Naiman Phone Number"). All calls to him referenced herein were to the Louis Naiman Phone Number.

127.   The Louis Naiman Phone Number is assigned to a cellular telephone service.

128.   The Louis Naiman Phone Number has been listed on the NDNCR since 2015.

129.   Plaintiff Louis Naiman never gave the his phone number to Defendants.

130.   Plaintiff Louis Naiman never did business with Defendants.

131.   Sunrun called the Louis Naiman Phone Number on March 25, 2019.

132.   Sunrun used an ATDS to make that call.

133.   The caller ID that showed on that call was (707) 244-0518.

134.   The purpose of the call was to sell Sunrun's goods and services.

135.   On March 25, 2019, Sunrun sent an email to Plaintiff Louis Naiman's email address.

136.   Sunrun called the Louis Naiman Phone Number on May 6, 2019.

137.   Sunrun used an ATDS to make that call.

138.    The caller ID that showed on that call was (707) 247-6959.

139.    The purpose of that call was to sell Sunrun's goods and services.

**I.      The Invasion of Privacy Caused by Defendants' Automated Telemarketing**

140.    Before directing their automated telemarketing to them, Defendants never did anything to confirm that Plaintiffs had provided prior express written consent to their telemarketing.

141.    Plaintiffs' attention was caught by the fact that the calls appeared local.

142.    Sunrun had and has a pattern and practice of recording calls—even cellular calls—with Californians without having obtained their consent.

143.    Media Mix had and has a pattern and practice of recording calls—even cellular calls—with Californians without having obtained their consent.

144.    The conduct alleged herein:

    a.      invaded Plaintiffs' privacy and solitude;

    b.      was highly offensive to Plaintiffs;

    c.      interrupted Plaintiffs' train of thought;

    d.      wasted Plaintiffs' time;

    e.      annoyed Plaintiffs;

    f.      harassed Plaintiffs; and

    g.      consumed the battery life of Plaintiffs' cellular telephones.

## V.     VICARIOUS LIABILITY

145.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

146.    In a January 4, 2008, ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

147.    The FCC has instructed that sellers such as Sunrun may not avoid liability by outsourcing telemarketing to third parties, such as Media Mix 365:

1         [A]llowing the seller to avoid potential liability by outsourcing its
     telemarketing activities to unsupervised third parties would leave
2         consumers in many cases without an effective remedy for
     telemarketing intrusions. This would particularly be so if the
3         telemarketers were judgment proof, unidentifiable, or located
     outside the United States, as is often the case. Even where third-
4         party telemarketers are identifiable, solvent, and amenable to
     judgment, limiting liability to the telemarketer that physically
5         places the call would make enforcement in many cases
     substantially more expensive and less efficient, since consumers
6         (or law enforcement agencies) would be required to sue each
     marketer separately in order to obtain effective relief. As the FTC
7         noted, because "sellers may have thousands of 'independent'
     marketers, suing one or a few of them is unlikely to make a
8         substantive difference for consumer privacy."
9

10   *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks

11   omitted).

12       148.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a

13   corporation or other entity that contracts out its telephone marketing "may be held vicariously

14   liable under federal common law principles of agency for violations of either section 227(b) or

15   section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

16       149.    Sunrun is liable for telemarketing calls physically dialed by Media Mix.

17       150.    Sunrun hired Media Mix to originate new business for Sunrun using

18   telemarketing calls.

19       151.    Sunrun controls the day-to-day activities of Media Mix's telemarketing.

20       152.    Sunrun restricts the geographic location to which its telemarketing vendors,

21   including Media Mix, can call.

22       153.    Sunrun instructs its telemarketers, including Media Mix, regarding certain

23   numbers that they should or should not call.

24       154.    Sunrun knew or reasonably should have known that Media Mix was violating the

25   TCPA on Sunrun's behalf but Sunrun failed to take effective steps within its power to cause

26   Media Mix to stop.

27

28

155.    Any reasonable seller that accepts telemarketing leads from lead generators whose leads are challenged in TCPA litigation or otherwise would and should investigate to ensure that the calls were made in compliance with the TCPA.

156.    Media Mix was alleged to have made calls on behalf of Sunrun in *Slovin*.

157.    Last Friday, the FTC alleged that since at least 2015, Media Mix has called millions of phone numbers on the NDNCR and has repeatedly or continuously called consumers with the intent of annoying, abusing or harassing them.

158.    Sunrun is well aware of Media Mix's abusive conduct but continues its relationship with Media Mix.

159.    The May 2013 FCC ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 ¶ 46.  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## VI.    CLASS ACTION ALLEGATIONS

160.    Cellular Telephone Class Definition: Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiffs bring this case on behalf of three classes (each a "Class," collectively, the "Classes"). The first Class (the "Cellular Telephone Class") is defined as follows: All persons in the United States to whom:

      a.    Defendants, any of them and/or a third party acting on any of their behalf made a call or sent a text message;

      b.    to a cellular telephone number;

      c.    using an ATDS or an artificial or prerecorded voice;

      d.    between September 1, 2018, and the first day of trial.

161.    Plaintiffs are members and proposed representatives of the Cellular Telephone Class.

1      162.  <u>DNC Class Definition</u>: The second Class (the "DNC Class") is defined as follows:

2  All persons in the United States to whom:

3         a.  Defendants, any of them and/or a third party acting on any of their behalf

4  made a call or sent a text message;

5         b.  to a residential (including residential cellular) telephone number listed on

6  the NDNCR for at least 31 days before at least two of such communications in a 12-month

7  period;

8         c.  for telemarketing purposes;

9         d.  between September 1, 2018, and the first day of trial.

10      163.  Plaintiffs Loftus is a member and proposed representative of the DNC Class.

11      164.  <u>California Cellular Telephone Class Definition</u>: The third Class (the "California

12  Cellular Telephone Class") is defined as follows: All persons in California with whom:

13         a.  Defendants, any of them and/or a third party acting on any of their behalf

14  participated in a phone call;

15         b.  while the person was on a cellular telephone;

16         c.  between June 26, 2018, and the first day of trial.

17      165.  <u>Exclusions</u>: Excluded from the Classes are Defendants, any entity in which

18  Defendants (or any of them) have a controlling interest or that has a controlling interest in

19  Defendants (or any of them), Defendants' legal representatives, assignees, and successors, the

20  judges to whom this case is assigned and the employees and immediate family members of all of

21  the foregoing.

22      166.  <u>Numerosity</u>: The Classes are so numerous that joinder of all their members is

23  impracticable.

24      167.  Sunrun is among the largest solar energy companies in the United States.

25      168.  Sunrun is publicly traded.

26      169.  Sending a robotext or placing a robocall costs less than one cent.

27      170.  Therefore, Defendants could afford to, and did, send millions of robocalls.

28

171.   Commonality: There are many questions of law and fact common to Plaintiffs and members of their respective Classes. Indeed, the very feature that makes Defendants' conduct so annoying—its automated nature—makes this dispute amenable to classwide resolution. These common questions of law and fact include, but are not limited to, the following:

      a.    whether the calls were dialed *en masse* by ATDSs;

      b.    whether Defendants' desire to sell solar goods and services constitutes an "emergency" within the meaning of the TCPA;

      c.    whether Defendants are in the United States;

      d.    whether Defendants had a pattern and practice of failing to obtain prior express written consent from people to whom they directed telemarketing;

      e.    whether Defendants had a pattern and practice of recording parts of cellular communications without having obtained the consent of all parties;

      f.    whether Defendants had a pattern and practice of failing to remove cellular telephone numbers from their telemarketing lists;

      g.    whether Defendants had a pattern and practice of failing to remove numbers on the NDNCR from their telemarketing lists;

      h.    whether Defendants' violations of the TCPA were knowing or willful; and

      i.    whether Defendants should be enjoined from continuing to robocall and telemarket to people in violation of the TCPA and from continuing to record cellular communications in violation of CIPA.

172.   Typicality: Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs' claims and those of the Classes arise out of the same course of conduct by Defendants and are based on the same legal and remedial theories.

173.   Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained competent and capable counsel experienced in TCPA class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. The interests of Plaintiffs and their counsel are aligned with those of the proposed Classes.

174.   Superiority: The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues, making a class action the superior means of resolution. Adjudication of these common issues in a single action has important advantages, including judicial economy, efficiency for Class members and classwide *res judicata* for Defendants. Classwide relief is essential to compel Defendants to comply with the TCPA.

     a.   Control: The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action (up to $1,500 per TCPA violation, and $5,000 per CIPA violation) are dwarfed by the cost of prosecution.

     b.   Forum: The forum is a desirable, efficient location in which to resolve the dispute because Sunrun is headquartered in it and the Court is already familiar with many of the key issues from *Slovin v. Sunrun, Inc.*, Case No. 4:15-cv-05340-YGR.

     c.   Difficulties: No significant difficulty is anticipated in the management of this case as a class action. Management of the claims at issue is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated (and thus highly uniform) and because the TCPA and CIPA articulate bright-line standards for liability and damages.

175.   Appropriateness: Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

## VII.   FIRST CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Robocalling)
On Behalf of Plaintiffs and the Cellular Telephone Class
Against All Defendants**

176.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

177.   Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiffs and

1    members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice

2    without prior express written consent.

3        178.    Plaintiffs and members of that Class are entitled to an award of $500 in damages

4    for each such violation. 47 U.S.C. § 227(b)(3)(B).

5        179.    Plaintiffs and members of that Class are also entitled to and do seek an injunction

6    prohibiting Defendants and/or their affiliates and agents from violating the TCPA, 47 U.S.C. §

7    227(b)(1), by placing non-emergency calls (including text messages) to any cellular telephone

8    number using an ATDS and/or artificial or prerecorded voice without prior express written

9    consent.

10                    VIII.    SECOND CLAIM FOR RELIEF
11    (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. §
                                227(b)(1)—Robocalling)
12              On Behalf of Plaintiffs and the Cellular Telephone Class
                              Against All Defendants
13
         180.    Plaintiffs reallege and incorporate by reference each and every allegation set forth
14
      in the preceding paragraphs.
15
         181.    Defendants and/or their affiliates or agents knowingly and/or willfully violated
16
      the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone
17
      numbers of Plaintiffs and members of the Cellular Telephone Class using an ATDS and/or
18
      artificial or prerecorded voice without prior express written consent.
19
         182.    Plaintiffs and members of that Class are entitled to an award of up to $1,500 in
20
      damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3).
21
                      IX.    THIRD CLAIM FOR RELIEF
22    (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)—Telemarketing)
              On Behalf of Plaintiff Loftus and the DNC Class
23                            Against All Defendants

24       183.    Plaintiff Loftus realleges and incorporates by reference each and every allegation

25    set forth in the preceding paragraphs.

26       184.    Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. §

27    227(c); 47 C.F.R. § 64.1200(c)(2), by placing multiple unsolicited telemarketing calls within a

28

1   12-month period to the residential (including residential cellular) telephone numbers of Plaintiff

2   Loftus and members of the DNC Class even though those numbers had been listed on the

3   NDNCR for at least 31 days.

4         185.   Plaintiff Loftus and members of that Class seek an award of $500 in damages for

5   each such violation. 47 U.S.C. § 227(c)(5)(B).

6         186.   Plaintiff Loftus and members of that Class are also entitled to and do seek an

7   injunction prohibiting Defendants and/or their affiliates and agents from violating the TCPA, 47

8   U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including

9   text messages) to any telephone numbers listed on the NDNCR for at least 31 days.

**X.     FOURTH CLAIM FOR RELIEF**
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. §**
**227(c)—Telemarketing)**
**On Behalf of Plaintiff Loftus and the DNC Class**
**Against All Defendants**

13
14        187.   Plaintiff Loftus realleges and incorporates by reference each and every allegation

     set forth in the preceding paragraphs.

15
16        188.   Defendants and/or their affiliates or agents knowingly and/or willfully violated

     the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing multiple unsolicited

17   telemarketing calls within a 12-month period to the residential (including residential cellular)

18   telephone numbers of Plaintiff Loftus and members of the DNC Class even though those

19   numbers had been listed on the NDNCR for at least 31 days.

20        189.   Plaintiff Loftus and members of that Class are entitled to and seek an award of up

21   to $1,500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

**XI.    FIFTH CLAIM FOR RELIEF**
**(Violations of the California Invasion of Privacy Act, Cal. Penal Code § 632.7—**
**Eavesdropping)**
**On Behalf of Plaintiff Loftus and the California Cellular Telephone Class**
**Against All Defendants**

26        190.   Plaintiff Loftus realleges and incorporates by reference each and every allegation

27   set forth in the preceding paragraphs.

28

- 21 -
FIRST AM. COMPL.
*Loftus v. Sunrun Inc.*, Case No. 3:19-cv-01608-YGR

1   191. Defendants and/or their affiliates or agents violated CIPA, Cal. Penal Code §

2 632.7, by recording cellular telephone calls with Plaintiff Loftus and members of the California

3 Cellular Telephone Class without their consent.

4   192. Plaintiff Loftus and members of that Class are entitled to and seek an award of

5 $5,000 in damages for each such violation.

6   193. Plaintiff Loftus and members of that Class also seek an injunction prohibiting

7 Defendants and/or their affiliates and agents from violating CIPA, Cal. Penal Code § 632.7, by

8 recording cellular telephone calls with Californians without their consent.

9       **XII. PRAYER FOR RELIEF**

10   WHEREFORE, Plaintiffs, on their own behalf and on behalf of all members of the

11 Classes, pray for judgment against Defendants as follows:

12   A. Certification of the proposed Classes;

13   B. Appointment of Plaintiffs as representatives of their respective Classes;

14   C. Appointment of the undersigned counsel as counsel for the Classes;

15   D. A declaration that actions complained of herein violate the TCPA and CIPA;

16   E. An order enjoining Defendants and their affiliates, agents and related entities from

17 engaging in the conduct set forth herein;

18   F. An award to Plaintiffs and the Classes of damages, as allowed by law;

19   G. An award to Plaintiffs and the Classes of costs and attorneys' fees, as allowed by

20 law, equity and/or California Code of Civil Procedure section 1021.5;

21   H. Leave to amend this complaint to conform to the evidence presented at trial; and

22   I. Orders granting such other and further relief as the Court deems necessary, just,

23 and proper.

24       **XIII. DEMAND FOR JURY**

25   Plaintiffs demand a trial by jury for all issues so triable.

26      **XIV. SIGNATURE ATTESTATION**

27   The CM/ECF user filing this paper attests that concurrence in its filing has been obtained

28 from each of its other signatories.

1

2       RESPECTFULLY SUBMITTED AND DATED this 26th day of June, 2019.

3

4                                  By: */s/ Jon B. Fougner*
                                       Jon B. Fougner
5

6                                      Anthony I. Paronich, *Pro Hac Vice*
                                       anthony@paronichlaw.com
7                                      PARONICH LAW, P.C.
                                       350 Lincoln Street, Suite 2400
8                                      Hingham, Massachusetts 02043
                                       Telephone: (617) 738-7080
9                                      Facsimile: (617) 830-0327

10

11                                     Edward A. Broderick, *Pro Hac Vice*
                                       *Forthcoming*
12                                     ted@broderick-law.com
                                       BRODERICK LAW, P.C.
13                                     99 High Street, Suite 304
                                       Boston, Massachusetts 02110
14                                     Telephone: (617) 738-7080
                                       Facsimile: (617) 830-0327
15

16                                     Matthew P. McCue, *Pro Hac Vice*
                                       mmccue@massattorneys.net
17                                     THE LAW OFFICE OF MATTHEW P. McCUE
                                       1 South Avenue, Suite 3
18                                     Natick, Massachusetts 01760
                                       Telephone: (508) 655-1415
19                                     Facsimile: (508) 319-3077

20

21                                     Andrew W. Heidarpour, *Pro Hac Vice*
                                       aheidarpour@hlfirm.com
22                                     HEIDARPOUR LAW FIRM, PPC
                                       1300 Pennsylvania Avenue NW, 190-318
23                                     Washington, DC 20004
                                       Telephone: (202) 234-2727
24

25                                     *Attorneys for Plaintiffs William Loftus, Sidney*
                                       *Naiman, Louis Naiman and the Proposed*
26                                     *Classes*

27

28

# EXHIBIT B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| WILLIAM LOFTUS, et. al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:19-cv-1608-RS |
| | ) | |
| SUNRUN, INC., et. al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Resource Marketing Corp., 800 Route 146, Suite 175, Clifton Park, New York 12065

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See the Attached Schedule A.

| Place: DIRECTLY TO THE UNDERSIGNED COUNSEL ELECTRONICALLY or to Lighting Legal,  Albany, NY 12210 | Date and Time: 14 days after receipt. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       08/06/2019

|  *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Anthony I. Paronich |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiff                                                        , who issues or requests this subpoena, are:

Paronich Law, P.C., 350 Lincoln St., Suite 2400, Hingham, MA 02043, anthony@paronichlaw.com, (508) 221-1510

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### INSTRUCTIONS

1.  You are required to search not only for hard copy documents, but for electronically generated, maintained or stored information, including data that exist on your computers' hard drives, on computer servers to which you have access, in email accounts, in text messaging accounts, and all other places in which responsive electronic data may be stored.

2.  Where possible, all electronically generated, maintained or stored information should be produced in its native format and in a format compatible to litigation-support databases and review systems. Where possible, such documents should contain searchable text and searchable metadata in a load file format. File fidelity and resolution should not be downgraded; for instance, electronic files should not be printed and then scanned.

### DEFINITIONS

1.  When used in these Requests, "Defendant" means Sunrun Inc., including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

2.  When used in these Requests, "you" or "your" (or synonyms thereof) means Resource Marketing Corp., 800 Route 146, Suite 175, Clifton Park, New York 12065, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

### REQUESTS

**Request No. 1:**  All documents reflecting any call (including attempted call) made by you for the Defendant, or to generate leads for Defendant (even if Defendant was not the exclusive buyer or beneficiary of said leads), or that could have generated a lead for the Defendant, since September 1, 2018. A complete answer will include at least the following:

   a.  Identifying information for the person you were trying to reach (e.g., name, business name, address, email, phone number);

   b.  Information for the calls themselves, including the phone number called, the date and time of the call and the result of the call (e.g., no answer, message left, "spoke with John Doe and updated business data," etc.);

    c.   All responses to the call, whether by live voice, IVR, SMS or otherwise;

    d.   Information identifying the dialer and equipment used, including identification of the equipment and software used to make the call and any third party involved (e.g., Guaranteed Contacts, Aspect, Avaya, Soundbite, Five9, Vicidial, Lead Science, Ytel), the location for call origination, the dialer and the dialer's capacities; and

    e.   Any documents showing the prior express consent of the called party to be called.

**Request No. 2:** All correspondence, manuals and ESI regarding the capacity of the dialing system used to transmit outbound telephone calls identified in response to Request No. 1.

**Request No. 3:** Documents that identify any recorded message (including but not limited to the audio files of any such messages), the dialing mode or option the dialing system was in when it made each of the calls identified in response to Request No. 1.

**Request No. 4:** All documents and communications reflecting your process for obtaining phone numbers to (1) sell to Defendant or (2) call in order to transfer a call, lead or prospect to Defendant.

**Request No. 5:** To the extent you claim that your company obtained permission for automated calls concerning Defendant, produce all documents that identify:

    A.   Any signed writings evidencing that permission;

    B.   As it relates to any website visits that you assert are being used in place of signed writings:

        i.   All documents that evidence a clear and conspicuous statement that informed consumers of their right to withdraw their consent to receive telemarketing calls;

        ii.   All documents that evidence a clear and conspicuous statement that informed consumers of the procedures they must use to withdraw consent, and the procedures they may use to update their contact information that was used as a basis for any alleged consent to make telemarketing calls to them.

2

**Request No. 6:** To the extent you claim that your company obtained permission for automated calls concerning Defendant via websites:

        A.      Produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

        B.      For any website identified in response to the prior request, produce all access, server and error logs and security and fraud alerts during the period you claim visits to that website constituted consent or permission to contact any putative class member with telemarketing calls.

        C.      For any website identified in response to the prior request, produce all architectural diagrams, wireframes and application mockups.

        D.      Produce all documents that identify the affiliate(s) compensated directly or indirectly by you for each purportedly consenting consumer.

        E.      Produce all documents that identify the referring URL from which each purportedly consenting consumer came to your website.

        F.      Produce all documents that identify any vendor or company used for any website responsive to these requests that is used by that website or its owner or operator for visitor traffic reporting. This includes but is not limited to any SEO or internet marketing consultants.

        D.      Produce all documents that identify the bandwidth usage for any website responsive to these requests during the during the period you claim visits to or actions on that website constituted consent or permission to contact any putative class member with telemarketing calls.

        E.      Produce documents that identify the website host(s) for any website responsive any of the foregoing and the dates each host was active for each respective website.

        F.      If any documents responsive to the requests in this Schedule A are in the hands of third parties, produce documents that identify those third parties

**Request No. 7:** All documents relating to legal demand letters, informal complaints, formal lawsuits, and all government enforcement actions or investigations sent to you in any way relating to allegations of unlawful telemarketing during the period beginning four years before the filing of the original complaint in this matter and continuing to the present. This includes all complaints, as well as all responses to and investigations into the same.

**Request No. 8:** All documents relating to the plaintiffs in this case, or either of them.

**Request No. 9:** All internal communications, including emails, slideshows, word processing documents, text messages, calendar entries, meeting notes, voicemails and Skype logs, concerning Defendant.

**Request No. 10:** Communications with any third party concerning the litigation captioned on the subpoena.

# EXHIBIT C

UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA

AFFIDAVIT OF SERVICE



*137939*

Civil Action no :3:19-cv-1608-RS

| Plaintiff(s): | WILLIAM LOFTUS, ET AL. | |
|---|---|---|
| | | -vs- |
| Defendant(s): | SUNRUN, INC., ET AL | |

STATE OF NEW YORK
COUNTY OF ALBANY    ss.:

**Corey Doyle**, the undersigned, being duly sworn, deposes and says: that the deponent is not a party to this action, is over 18 years of age and resides in the STATE OF NEW YORK.

On **08/07/2019** at **10:24 AM**, deponent served the within **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION, FEDERAL RULE OF CIVIL PROCEDURE 45 (C), (D), (E), AND (G) (EFECTIVE 12/1/13) AND SCHEDULE A** on **RESOURCE MARKETING CORP.** at **800 Route 146, Suite 175, Clifton Park, NY 12065** in the manner indicated below:

By delivering a true copy of each to and leaving with **MARK HICKEY, PARTNER** who stated he/she is duly authorized to accept legal documents.

A description of the **RESPONDENT**, or other person served on behalf of the **RESPONDENT** is as follows:

| Sex | Color of skin/race | Color of hair | Age(Approx) | Height(Approx) | Weight(Approx) |
|---|---|---|---|---|---|
| Male | White | Brown | 35-43 | 5Ft10in | 165 lbs |
| Other Features: | | | | | |

Sworn to and subscribed before me on 08/08/2019

Notary Public

Daniel O'Leary
Notary Public, State of NY
No.01OL6293343
Qualified in Schenectady County
Commission expires 12/09/2021

[ ] Kristen Smith
Notary Public, State of NY
No.01SM6357988
Qualified in Albany County
Commission expires 05/01/2021

[ ] Kerry Gunner
Notary Public, State of NY
No. 01GU5038710
Qualified in Albany County
Commission expires 02/06/2023

X _____
Corey Doyle
Lightning Legal Services, LLC
P. O. Box 9132
Albany, NY 12209
518.463.1049

Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043



# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM LOFTUS, SIDNEY NAIMAN and LOUIS NAIMAN, individually and on behalf of all others similarly situated, | Case No. |
| Petitioners, | |
| v. | |
| RESOURCE MARKETING CORP. | |
| Respondent. | |

### [PROPOSED ORDER] ON PETITIONER'S MOTION FOR ORDER TO REQUIRE RESPONDENT RESOURCE MARKETING CORP. TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENA AND INCORPORATED MEMORANDUM OF LAW

Having reviewed the petitioners' motion and supporting documentation thereto, this

Court GRANTS the petitioners' motion and ORDERS Resource Marketing Corp. to provide all

requested documents within 14 days after this Order and advises Resource Marketing Corp. that

its failure to comply may result in the imposition of sanctions pursuant to Fed. R. Civ. P. 45(g).

DATED: _____

_____
United States District Judge